Our first case on the DACA this morning is clause number 16-50250, United States of America v. Fidse. The appellant ready to proceed. You may. Judy Madewell on behalf of Abdullahi Omar Fidse. The issue in this appeal is the applicability of the terrorism enhancement under guideline 3A1.4 in Mr. Fidse's case. 3A1.4 provides for a dramatic increase in a defendant's guideline range because his offense involved or was intended to promote a federal crime of terrorism. Federal crime of terrorism has a very specific definition for purposes of the guidelines. Fidse's offenses were conspiracy to obstruct an immigration proceeding and conspiracy to make false statements to the FBI in a terrorism investigation. May I ask, did you argue the first appeal? Yes, I did, Your Honor. Is there an issue as to the scope of the remand or not? And were the proceedings below consistent with the remand? That's not an issue before us? No, it's not an issue. It's not an issue. The original panel that heard this case in their written published opinion found that Fidse's offenses did not involve a federal crime of terrorism. They remanded to the district court then on the question of whether those offenses involved were intended to promote a federal crime of terrorism with specific instructions for the district court to clarify its factual findings because the court couldn't make the decision based on disputed facts that hadn't been resolved. So make it clear. When you say the court, you mean the Fifth Circuit? I'm sorry, the Fifth Circuit, Your Honor. They couldn't resolve it. So the district court was to clarify its factual findings and then determine whether the factual record supported the conclusion that Fidse's false statements obstructed the investigation of a federal crime of terrorism and to specify the enumerated federal crime of terrorism that Fidse intended to promote. Originally, the government's theory— Again, just to underscore what Judge Higginson asked you, you don't challenge—let me start again. You agree that the district judge did on remand what our court ordered him to do. Yes. You just dispute whether he's correct in what he did. That is correct. Including his over 20 pages of findings of facts and conclusions of law. On appeal, I challenged for de novo review the application of the law to the facts in this case. But it was that government submitted voluminous findings of fact. They did. And you did, too. Yes. And then the district court just says, I heard that two-day hearing and I adopt the government in globo. So if in those 30 pages or whatever of findings of fact, there is the statement that they were investigating an FTC, and if in those 30 pages of finding fact there is a finding by the district court that Fidse, your client's obstruction impeded, and hence through the commentary will be presumed to have intended to promote it, put those two facts together, are we just in a situation of clear air review as to each fact separately? No, I don't believe we are. I think we're interpreting the language of the guideline. That commentary. The guideline and its commentary, yes. The fact that the government said they were investigating a Federal crime of terrorism. And the court found that. And the court found that. And the court found that. The government has to, for this enhancement, the government has to prove the existence of a Federal crime of terrorism by a preponderance of the evidence. Right. The original theory of the government on the Federal crime of terrorism was providing material support to a foreign terrorist organization. They backed off of that when it came out that Fidse — I don't want to interrupt you, but I guess, you know, and I — the first appeal, you were persuasive, and it's sort of difficult for me with this many findings of fact, but it doesn't really matter if the government's theory shifted. If the district court ultimately said they were investigating an FCT or FTC, whatever, FCT. Right? Isn't that right? The court just said, I found that they were at the time. Conspiracy to support — So am I actually challenging that factual finding that they were? Well, I would have thought you would. To me, the difficulty, to hint to you where, just looking at the case law, the difficulty is whether there's a link or not. What the scienter is, is do they get this huge enhancement, level 32, criminal category 4, for sort of an exculpatory no, I didn't know who he was, which then the commentary says, well, that's obstructing, and it is deemed to be intending to promote something that the utterer may not even have known about. And independently, the court says they were investigating. If that's the simple equation, then I think you're in trouble unless you can show clear error. But if the law says there's got to be a link between the two, that the defendant's got to be intentionally promoting the FCT, I don't think that link was found here. Well, then I am challenging the court. Well, you don't have to adopt mine. This may not reflect at all how they think of it. So I would argue what you think is right. And the only thing I would add in connection with that, when you say you're adopting it, so you are now adopting a clear error review versus the no vote review. Yes. Okay. And you're okay with that. And that's what I have. Okay. I mean, I think the way Judge Higginson presented it clarifies how I should have approached the argument in my briefing. I'm just asking you if you recognize that that takes you from the land of de novo review to clear error review. It takes me from the land of de novo review to clear error as to the one finding by the court. It also takes you into Judge Higginson's confused mental state. So you may not want to. I'm being quite serious. I would stick with the argument you think is right and you, so, but anyway, you've gone ahead. Clear error on these two. Let's go ahead. And you've got eight minutes to point that out. Okay. So my interpretation of this enhancement is that it requires that there be proof by a preponderance of the evidence of a Federal crime of terrorism, not by beyond a reasonable doubt, but by a preponderance of the evidence. The basis for that is the guideline itself. It provides for a dramatic increase. The only comparable guidelines that have that kind of increase are career offender, armed career criminal, and repeat sexual offender. And those are all based on prior convictions proved beyond a reasonable doubt. So for this guideline, what they have to prove is this Federal crime of terrorism. And this is supported, I mean, under the government's argument and the district court's finding, it would be easier to apply this enhancement for obstructive conduct, for false statements, than it would be to apply it when the person actually committed one of the enumerated offenses. And that's supported by the Fourth Circuit's series of the Chandia cases, where the district court found that the defendant had committed providing material support to a foreign terrorist organization and applied the enhancement. And the Fourth Circuit remanded it and said, you didn't find the second part, which is the required mens rea. This is also supported by comment four in the guideline commentary, where the sentencing commission said, you may have circumstances where the government meets the first prong that the defendant committed an enumerated offense, but they don't meet the mens rea. So instead of it being calculated to influence government, it's calculated to intimidate the civilian population. The sentencing commission said that would not qualify for an enhancement under 3A1.4. Instead, it's a recommended upward departure. Breyer. Okay. So that's a whole separate in the structure. That's a separate scienter requirement, the calculation finding. Yes. I didn't notice that you were really appealing that, but maybe you are. But here we're talking about al-Shabaab. And one could infer from the facts here that al-Shabaab's mission itself is calculated to obstruct government. This isn't a little teeny thing. This is a sort of serious. I didn't challenge that specific finding because I don't believe that they can even prove that he was intending to promote a Federal crime of terrorism. So I don't believe that they can prove that there was an actual conspiracy to provide material support to terrorists that was being investigated. Yeah. There was a terrorism investigation. They were legitimately investigating this man. As a U.S. citizen, when I read this stuff, I certainly hope the government is investigating it. That doesn't mean that it comes within the requirements of 3A1.4, which has a very specific requirement regarding the Federal crime of terrorism. None of the published cases that have ever applied this enhancement have applied it to this type of fact scenario where the government just says, we're investigating. And the district court did put the label on. They're investigating an enumerated crime, conspiracy. Yes. And so my argument is the facts don't support that they were actually investigating a Federal crime, an enumerated, that they were actually investigating conspiracy to provide material support to al-Shabaab. And one of the facts they point to is his statement that he had provided an armed vehicle to al-Shabaab. That took place in 2006. The government expanded its theory to cover conspiracy, but this Court held in the El-Mossein case that pre-designation conduct can't be used to prove conspiracy to provide material support. Post-designation, the conduct we have is speech. And the Supreme Court, and it's not material support. The Supreme Court made clear in the Holder v. It could be an overt act to an ongoing conspiracy, right, or wrong. It could be evidence to show intent or motive as to a conspiracy. But it can't actually be the material support itself. Because hold in humanitarian law. Part of the problem, just to interrupt on this being your focus, is most of these cases our defendant gets pulled into the grand jury, and then they're told we're investigating these crimes. So it's unequivocal on the record they were told, and we all know what the title of the section is. But most of the time agents are going to subjects and they say, we'd like to talk to you. They would never say, and at this early stage in the investigation, this is the Title 18 code number we're looking into. So you won't get that explicit statement of the crime. So you have to trust here Agent Wagner made the statements and the district court said that's 2339. I would argue that actually my argument doesn't tie the government's hands in investigating. They still get to investigate to do it that way. They get to bring charges against the individual. They get to prosecute them. And it doesn't tie the hands of the district court. We're under advisory guidelines now. The district court can apply the appropriate sentence. We had multiple counts. They can stack. They can do an upward variance. The guideline itself provides for an upward departure. Towards the end, the district judge sort of said, well, I'll get there anyway as an alternative. That hasn't been argued by the government at all here. No, because then the district court took it back and said, never mind. I'm not doing it that way. And I would argue that we can — the government can't show harm because one of the facts that they were relying on was this phone number on the memory card that had been in the — as soon as Bidze showed up at the port of entry, the memory card was put into a property room and it stayed there for the next three years. Two years after he's in custody, there's the Ugandan bombing. And the FBI is informed that a Mohammed Suleiman had a phone number. And that H Mohammed in that phone number was on that memory card that was in the property room. Subsequent to that, they never questioned him about this. Subsequent to that, Bidze is indicted in this case. And a month after that, the FBI gets and examines that memory card and finds that name. So the government's theory was if he had told us, when we asked him about his terrorism ties, if he had told us about this guy and his phone number, we might have been able to stop a terrorism event. Those are tough facts, though. They are tough facts. In the past, he gives an armored car to al-Shabaab, and now in the future, he's got his little SIM card linking to someone who bombed the Agyar. They are tough facts. They are no doubt tough facts. They sort of describe the people who would get this enhancement. But the problem is that it required too many assumptions. He was never questioned on that. It requires that we assume who he put the number on, that he put it on — we know he put it on there before — or it was put on the card before June 2008. So at that time, this Mohammed had to have been actively involved with al-Shabaab, and Fidze had to have known it. And you're saying it's possible given the other — Yes, these are good arguments, but you didn't persuade the district court. Well, also, just to show how weak that was, this man was acquitted. Mohammed Hamid Suleiman was acquitted by the Ugandan judge. Again, these are good fact arguments. Counsel, address in the few seconds you have left this. I don't mean this in a pejorative sense to tag along that the government got in on these findings and fact and conclusions of law about his Sharia activities, et cetera, et cetera, after he was incarcerated. I don't recall from your brief exactly how you addressed that. I think I put it in the statement of facts, but I don't believe I actually addressed it. Once again, my argument would be that under Holder v. Humanitarian Law Project, people get to say terrible things. They get to say terrible things, and it doesn't mean it's material support. For speech to constitute material support — I was surprised you didn't just say how on earth can they be using this post-offense activity to try to come back and make their case. And I believe that was one of the objections that was made in the district court. One of the objections was that they didn't have a chance to respond to it. But once again, I — All right. Thank you. Good morning. Mark Wimbrook, United States. Your Honors, the counsel's argument all rests on what she says, that we have to prove the crime of terrorism by the preponderance of the evidence. But that's not what the standard is, not what this Court found in 50-1, not when it adopted a wrong. What we have to show is the defendant intended to promote that he need not have completed or attempted or conspired to commit the actual crime. So you accept that. You have to prove that he intended to promote. How can a person intend to promote something that might not even exist? He intended to promote by obstructing the investigation. Does he have to know that they're investigating a federal crime of terrorism? And here's the hypothetical that I'm worried about, because these just jettison people into astronomical guideline ranges. So if it would apply to a false statement, agents come and say, do you know so-and-so? And the man says no, exculpatory no. It happens to be that the government's investigating that person whose identity he denies for a crime of terrorism. But the 1001 exculpatory no declarant doesn't even know. He couldn't intend to promote or impede that investigation. So what's the element you've got to prove to prove what you started out saying? We've got to show he intended to promote the federal crime of terrorism. In this case, as this Court found and as the application note 2B states, that obstructing an investigation of a crime of terrorism could be promoting that crime of terrorism. In this case, we don't have a simple exculpatory no. I know, but I'm asking you what the difficulty here, a few circuits have all struggled with this. What is the scienter if the guideline only applies for people who intend to promote a federal crime of terrorism? What if they don't even know what the government's investigating, but what they say does obstruct it? Would the guideline apply or not? I'd have to see the facts on that, Judge, because that's so far down from what we have, because what we have here— Okay. Well, then let me make it simpler for what we have here. What is—since it's 30 pages of findings, what is your best factual finding as to each of the elements of this guideline? Yes, sir. What paragraph? In other words, so first of all, that the man intended to promote. What paragraph would you draw our attention to where the district court found an intent to promote? So it was—the testimony was unimpeached and listed in paragraphs 5, 10, 21, and 32 that the defendant told two separate people— I know the facts, but where does the district court make a finding that he intended to promote this conspiracy to material support? Is it one of those paragraphs? I believe 32 would be the one where he summarizes all of the facts that he had previously found. Okay. And I'm just—because of time, and then I'll let you get back. The second element I think is necessary is that at that time, the government was investigating an enumerated crime plus one that was calculated to obstruct. What's the best paragraph where the district court made the finding that at the time where he denied—what's the best paragraph for that second element? The second element would be paragraph 15. Wonderful. 24, 31, and 32. Okay. Thank you. Go ahead. In this case, we're not looking at whether or not the FBI could prove the crime. What we were looking at is did they have a lawful basis to be investigating conspiracy to provide material support to terrorists and conspiracy to provide material support to a foreign terrorist organization. They have, based on the court's findings, that this defendant told two separate people how he previously purchased an armed technical for $100,000 with all the weapons and armed it and that the fighters were killed fighting the Ethiopians in Adali. Al-Shabaab were the only ones at that time frame fighting the Ethiopians at Adali. So we have him already admitting to two separate people in recorded conversations that he has provided material support to terrorists. He didn't lead that conspiracy. In fact, based on the information that he was volunteering to both the first source and then the second source, he's telling them how they should gather their weapons and terrorize the infidels, how the United States must suffer consequences for the allegations that it killed the Al-Shabaab leader, Aden Aro. This defendant is instructing, this defendant who allegedly had no military experience, is telling the first source in detail how to set up a blocking maneuver and an ambush of the U.S. ambassador in Kenya. For the FBI, when looking at all of these facts, for the FBI not to be investigating this defendant for the most readily provable serious crime, would have been negligent on their part. This, unlike any other field, with terrorism, it's not just the government's job to prosecute it or even just to investigate it, but to disrupt them and to prevent terrorist acts from happening. Knowing that this defendant already provided material support to Al-Shabaab, they would have been negligent not to be investigating. True, but that proves too much. I mean, that's the background to all U.S. anti-terrorism investigation. Everywhere, always, they're looking for that, and those terrorism organizations exist. Sure. So the issue here is where, I mean, I assume this is precisely why the prior panel remanded. They're saying where was the finding made that this man's statements intended to promote a conspiracy they were investigating at the time, rather than it turns out he was involved in it? I think the difference is, Judge, that what we're looking at is not that he directly intended to promote, that we certainly were looking at that. In fact, that's why the source, the second source was sent back to find out, well, how did you buy it? Where did you buy it from? Tell me how to buy it. How much is it going to cost me? Can you hook me up with this person? So we were looking for the ongoing conspiracy there, but what the intent to promote is in this case, was when we look at application note 2B, that obstructing an investigation into these crimes does intend to promote those crimes. That's sort of where courts have struggled, right? Because that could slip into a strict liability offense. Just because you happen to have obstructed them, knowing nothing about what they were investigating, do you get this huge jump up? Do you have a thought on that? Or even better, what's the circuit that you think correctly identifies how we should look at this enhancement? I think Benkala did it right. Sorry, what circuit was that? It was the Fourth Circuit. And this Court cited it in the opinion. I think with this, we're looking at the specific facts of the case. And without — not that I could use the names. We have done other terrorism investigations where we haven't gone for it because we can't prove it. But in this case, what we have is this defendant, FBI approached him, Mirandized him, told him they're conducting a terrorism investigation into his terrorist ties and into al-Shabaab. He was put on notice. They did ask him specifically, where did you come from? When were you in Kenya? How did your father die? Tell me about this armed technical you said you purchased. And he denied it all. He lied about it all. It wasn't a simple exculpatory no. He lied. He went to the point of saying, that's not my voice on the tape. You've made it up. And then on remand, the district court said, just made the findings you've just described. Yes, sir. And then, to another step further, he calls up his co-conspirator, Deka Sheikh, and says, the FBI is going to be coming. They're going to be asking about me, about terrorism stuff. Stick to our original story. Lie to them where and when we met. Lie to them how we were smuggled there. Tell them they're going to be asking about these numbers. Call Ahmad Darrow and have your fingerprints destroyed. We're not dealing with a simple exculpatory no here. We're dealing with active obstructing of an investigation. The Court made these findings in detail based on facts of the testimony on the record. Did the Court make — I mean, you've given us paragraphs, and I appreciate that. Did the Court say, I find he had the intent to obstruct or I find he had the intent to promote the terrorism conspiracy that they were investigating? Or do you think that's a distinction? I think — I'm sorry for the interruption. I think he did — my recollection is he most definitely said that they — that he obstructed the investigation through lying to the FBI in the interview and by having Deka Sheikh lie to him. I'm trying to remember in paragraph — But it can't be obstructed, any investigation that just, it turns out, happened to be into terrorism. Well, the Court made the finding that they were conducting a lawful investigation into conspiracy to commit material support, providing material support. If we affirm and agree with your analysis, especially if we're — if we're given a predicament of clear error of view, well, how would you write the limiting principle so that the exculpatory no person, the person says, I don't know the guy that you think just ran in my house, but he did, so he lied, and therefore he obstructed. But it turns out that the government was investigating that other person for terrorism. I think the defendant would have to be put on some notice, and I think they would have to say that we're conducting a terrorism investigation. But not a — they don't have to say we're conducting a federal crime of terrorism, one of the enumerated ones. It seems very formulaic, but that's sort of why the remand occurred from the first panel, right? No one denied that they had told him we're looking into terrorism, but our panel said, but it's only a certain type of terrorism, right? Well, the panel says yes. It has to be one of the enumerated crimes under 2332 B.G. 5. And the Court did so. In terms of where to draw the line and is it enough to tell them, again, I think it's going to be fact-specific, and luckily there's going to be — Is it enough to tell who? Because as I understand Judge Higginson's questions, he's talking about someone who's not the target of an investigation. Right. This is the person who's in a house, and he says someone runs in. So the person's not the target of the investigation. That's not what we have here. No, that's not what we have. They're talking to a target. Yes, sir. And I'm sorry, I did not understand that you were talking to just a witness. I think if you're walking in and you're asking a witness as opposed to a target who you're going to be questioning about specific information that you already have, I would think that you'd have to give them perhaps some type of warning, like a subject letter, not in writing, but basically as you pointed out when counsel was speaking, some type of notice. We're looking into these particular crimes. So if you say no and you're wrong, you're not just going to get the two-point enhancement for obstruction. You're going to get the giant one. So the guy's got to know that they were investigating a federal crime of terrorism. Right. It's significant, though, that we're talking about an enhancement because what we're talking about here versus a hypothetical, we're talking about somebody who has some convictions, and we're only having this conversation because we're talking about an enhancement. But someone who's a witness, we wouldn't be talking about an enhancement, would we, unless we got to a conviction for something. Right. There would have to be a conviction for some type of obstructive offense or some type of conspiracy. Yeah. I'm assuming the most basic obstruction, 1001. Right. Most investigations, you know, the FBI at the end, when they've got all their ducks lined up, they go to the target or whatever they want to call the person and say, do you have anything you want to say? The false denial, they'll add 1001 count. That would become an obstruction under the commentary it would seem to maybe trigger. That's my worry. Right. And I think that actually in at least the Western District of Texas, we tend to only use 1001s, in my experience, on terrorism cases. Normally we don't do it especially with witnesses. But in those cases – Forget the subject witness target category for me. But I think – Anyway, go ahead. The government's not arguing that in the end, at the end of the sentencing, the district court sort of said I would be there no matter what the enhancement. There was sort of back and forth on that. Are you not pressing that? The district judge did say that. The defense counsel objected to it, and the judge walked it back. So while I think he's telegraphed what he would do if it came down again, I would not rely on it. You can say he walked it back. He expressly said, okay, I'm not going to do that. Right. I think it would be a little hard for him on yet another remand to suddenly say I didn't mean what I said the first time. I mean, it was almost like he was embarrassed the way he responded. I wouldn't say that he was embarrassed. I didn't say he was embarrassed. I said it was almost as if he were embarrassed, the plain reading, the text of the transcript. Why would he give that up so quickly and easily? The transcript almost read like it was jocular. I didn't read it the same way, sir, but I could see why perhaps it might come out that way. It was so surprising that he does that, and then he just, bam, drops it. And I think that's why the first court had some issues with the factual findings as well. Tell me, what is the purpose of this, again, I call it the tag-along of the Sharia law while in confinement material? What was that supposed to show? I think what it showed was he was continuing to radicalize other people and that it just went to show that this was all in keeping with what he had been saying all along, that he was a supporter of jihadi beliefs, including, frankly, the killing of, as he referred to them as infidels, and that he had actually assisted with a very large investment in a technical with machine guns and AK-47s. Thank you. In this case, the district court made very detailed factual findings based on the requirements that this court sent back down. The district court has not been shown to be clearly erroneous that this defendant had provided material. Both sides provided proposed findings and conclusions. I assume the court called for them, asked for them to be submitted? No, sir, he didn't. The court did not. The government submitted. He did not change one word of your proposed findings and conclusions, did he? No, Your Honor. He adopted them. I mean, he said, I adopt their findings and conclusions. The other side had their opportunity. Yes, Your Honor. And the court did not invite those. I submitted mine. Defense submitted theirs. The court found ours. In fact, the only fact that the court did not find credible, or the only testimony the court did not find credible from the sentencing hearing was that of the defense investigator, Juan Hernandez, who did not speak Somali. But the court did make the factual findings. Defense has not shown that they were clearly erroneous. The court concluded that the defendant did obstruct the FBI investigation by lying to the FBI about where and when he came from, his support for al-Shabaab, al-Qaeda, Osama bin Laden, and that he bought the arm technical, and that he further obstructed by having Deke Sheik lie to the FBI about where and when they came and how his father was killed. All of this was supported by the testimony, the exhibits, and the pre-sentence report. And as the court said, it was the incontrovertible fact the defendant obstructed the FBI's terrorism investigation in conspiring to provide material support to terrorists and conspiracy to provide material support to a foreign terrorist organization. It's not a clearly erroneous finding. The district court made the findings. It's instructed, and it was not clearly erroneous. 3A1.4 applies in this case. The defendant did obstruct a lawful investigation into an enumerated crime of terrorism. We'd ask the court to affirm the sentence in this case. Thank you, counsel. Thank you, sir. Rebuttal. I agree with the government that the best case is the Bankala case. I urge the court to read the district court's opinion in that case because that involved a case where the government was doing a general terrorism investigation but also an investigation into specific federal crimes of terrorism. The district court judge in that case said that the general terrorism investigation isn't sufficient for purposes of the guideline, that it has to be a more specific targeted investigation of a federal crime of terrorism. But the district court found in that case that it was specific enough. They talked about that the government had enumerated specific potential violations. They were investigating specific people, Al-Tamimi and Abu Ali, who were under investigation for conspiracy to levy war against the United States and conspiracy to assassinate the president. During this investigation, which involved a group of men from one religious organization, one place that they all met at, and it ended up in an investigation of, I believe, eight of them or 11 of them that resulted in a number of different charges being levied against these individuals. And so there was a federal grand jury that was investigating very specific crimes and very specific individuals. And this person, Bengkala, was called before the grand jury and made false statements and obstructed the grand jury. Well, actually what happened is he was given immunity to testify and he refused to testify. So I do agree with the government that that's the best one to look at. However I presented this issue to the court, and I hope I haven't damaged the law in any way by doing so, this is a difficult issue because the guideline enhancement has a very specific requirement involved or was intended to promote. Then you have a commentary, note two, that seems to suggest a lesser requirement, some type of strict liability. Courts have, in fact, battled with this, and most have held that it can't be strict liability because that makes it easier under the commentary to get the enhancement than it would be under the actual guideline itself. And it also allows, and I want to stress again, my argument and your interpretation of this enhancement in no way is going to tie the government's hands from investigating terrorism. And these cases are likely to become more frequent. And it is possible that whatever decision is made, there could be an exculpatory note case. This is 1001. I feel like I defend a lot of 1001 cases. But it does impede the government's vital investigative ability to not be able to say to someone who is giving them a false no, are you aware if you don't speak the truth, you're looking at a lot of prison time. This isn't going to be a little 1001. This is going to be your category 432. That would help the government investigate terrorism. They can still say that. The Supreme Court has held that it's not a problem for government agents to lie. So if they don't know at that point whether it's going to apply or not, they can still threaten them with it. The case law is clear on that. So this isn't going to tie the government's investigative hands at all, and it's not going to tie the sentencing judge's hands to determine the proper sentence for this individual. So it really is a matter of interpreting this guideline that provides for it. And one of the criticisms that academics have made of this guideline is that it has no gradation. It's just one huge jump. So there's no gradation for supportive conduct, which under 2339B, support for a foreign terrorist organization, can include providing money for a humanitarian arm of Hamas. But you can still be convicted for that. Scholars have pointed out it doesn't have gradation. Yet we do rely on district courts to distinguish. And this, as you point out, facts here are more aggravated. So can you point to any case where this enhancement was given where it was an exculpatory, no hypothetical guy was this sort of innocent person? I can't see one. Since the first appeal on this case, I have only found four published opinions that have applied this enhancement. So maybe the government and courts aren't misusing it. So, I mean, I wish there was more direction on it, but there isn't, and my time is up. Thank you.